# NYITRAI *v.* BONIS, Administrator of the Estate of Leslie Engel

[No. 373, September Term, 1971.]

*Decided July 5, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ., and JAMES MACGILL, Chief Judge of the Fifth Judicial Circuit, specially assigned.

*Harold Buchman,* with whom was *Morton Guth* on the brief, for appellant.

*Ward B. Coe, Jr.,* with whom were *Joseph A. Bonis, William L. Corbin* and *Anderson, Coe & King* on the brief, for appellee.

MACGILL, J., delivered the opinion of the Court.

This is an appeal from a summary judgment entered in favor of the administrator on the ground that appellant's suit was barred by the Statute of Limitations. Code (1972 Repl. Vol.), Art. 57, § 1.

On September 16, 1966, Leslie Engel died intestate, a resident of Baltimore County, survived by a wife and daughter, his sole next of kin, who were residents of Hungary. On October 5, 1966, the appellant, Maria Nyitrai, and her sister, Irma Pallay, who purported to be nieces of the decedent but who were, in fact, nieces of a woman with whom the decedent had been living and who had died before the decedent, made an agreement with a lawyer (not counsel in this case) whereby he was to serve as administrator of Mr. Engel's estate for a fee of 10 per cent of the gross assets. Letters of Administration were granted to this lawyer by the Orphans' Court of Baltimore County on October 6, 1966. On April 12, 1967, the appellant entered into an agreement with the same lawyer whereby he was to act as her attorney in connection with a claim for "nursing services" rendered by her to the decedent. She was to pay the lawyer 25 per cent of the amount collected. Such a claim was

prepared and filed in the Orphans' Court. The total amount claimed for such services was $15,650.00 but the appellant indicated her willingness to accept $15,000.00 in satisfaction of it. The administrator, without disclosing the fact that he was acting as attorney for the appellant in the matter, petitioned the Orphans' Court for authority to settle the claim for $15,000.00. On April 19, 1967, that court passed an ex parte order authorizing the administrator to make settlement in the amount proposed. Around this time, the record does not disclose when, the fact that the decedent was survived by a widow and a daughter living in Hungary became known, as well as their identity. The administrator filed his second and final administration account on May 4, 1967. The gross estate amounted to $21,372.52, and after the deduction of appellant's claim, as well as taxes and expenses, the balance was shown as distributable to the wife and daughter of the decedent.

Thereafter the heirs of the decedent retained an attorney, the appellee, who filed exceptions to the appellant's claim. Although the date of the filing of the exceptions does not appear in the record, it was stated in the appellant's brief and in argument before this Court that the exceptions were filed on June 19, 1967. On September 7, 1967, the administrator wrote to the appellant informing her that the Orphans' Court had requested that he no longer represent her in the matter of her claim for nursing services and that she should retain other counsel. He added that "All the legal work which I have rendered to date is completely valid as to your said claim" and that "I am still the Administrator of the Estate of Leslie Engel, Deceased." In the following month the appellant retained her present counsel who entered into negotiations with counsel for the appellee toward settlement of the claim. It appears undisputed that during the settlement negotiations there were no inducements made to the appellant on behalf of the heirs not to file suit or any indications that any legal defense to the claim, including limitations, would be waived if no settlement

was reached. No settlement, in fact, was reached. On April 13, 1970, the Orphans' Court removed the original administrator and in his stead appointed the appellee who, on the same date, gave written notice to the appellant that her claim was denied. On June 4, 1970, this suit was filed.

Judge Turnbull, in granting the motion for summary judgment, found that the appellant, who did not speak English and who did not understand the duplicitous position of her original counsel, had not conspired with him as to the manner of asserting her claim. He found, nevertheless, that the appellee was not estopped from asserting the defense of limitations.

The first contention made on behalf of the appellant was that her suit was not barred by the statute of limitations referred to because it was not brought to her attention that her claim was disputed until exceptions were filed to it on June 19, 1967 and, accounting from that date, three years had not elapsed at the time of the filing of her suit. She points out that until that date the then administrator had acknowledged the claim and, in effect, had promised to pay it, by his acts in petitioning for authority to settle it, by including it in his second and final administration account and by the statement in his letter of September 7, 1967 that the legal work he had rendered to date was "completely valid as to her said claim".

We do not think that the statement in the letter, strictly speaking, constituted an acknowledgment by the administrator of the claim. The letter was not written by the attorney in his capacity as administrator but in his capacity as counsel for the appellant in connection with her claim against the estate and, regardless of what impression the appellant may have received from the language, the work characterized as "valid" referred to that work done by the attorney in his individual capacity, not as administrator of the estate. We think that this is made clear by the sentence immediately preceding the sentence quoted "Of course, no fee is due me for my legal services

in connection with your claim against the Estate of Leslie Engel, Deceased". It appears, therefore, that the inclusion and allowance of the claim in the second administration account was the last acknowledgment made of it by the administrator. It has been held that a fiduciary, in scheduling a debt in his account filed with the court, acknowledges the debt. 54 C.J.S., *Limitations of Actions,* § 314 (c). Limitations would, therefore, run from May 5, 1967, and, as it has been noted, suit was not filed on the claim until June 4, 1970.

It was contended on behalf of the appellant, however, that the conduct of the original administrator, whereby the appellant was lulled into a sense of false security, operated to estop him and his successor from interposing the defense of limitations. *See Chandlee v. Shockley,* 219 Md. 493, 150 A. 2d 438 (1959). The principle invoked by the appellant is well settled and it may be assumed from the record that the appellant, relying on the assurances of her then counsel, acting in his dual capacity, had no reason to suppose that there would be any impediment to the payment of her claim until the heirs filed their exceptions to the second and final administration account. She admitted, in her deposition, that she was aware of this action and it appears to be conceded that, from that time forward, she could no longer invoke the principle of estoppel. 51 Am.Jur.2d, *Limitations of Actions,* § 437. The question then arises as to whether or not she delayed for an unreasonable time in bringing this action, although it was brought within three years from the time when the circumstances creating the estoppel ceased to operate.

It has been generally held that "where the inducement for delay or the hindrance to the commencement of an action has ceased to operate before the expiration of the limitation period, so as to afford the plaintiff ample time thereafter in which to institute his action prior to the running of the statute of limitations, he cannot excuse his failure to do so on the ground of estoppel." 130 A.L.R. 8, 19 (1941); 24 A.L.R.2d 1413, 1423 (1952).

As it has been observed, the plaintiff became aware that her claim was disputed at or about the time exceptions were filed to it. Assuming that, under the circumstances, she still relied on the assurances of her then counsel, the record shows that after his letter of September 7, 1967, notifying her that he could no longer represent her in the matter, she retained present counsel on October 26, 1967, more than two years and seven months prior to the filing of her suit. It is true that there were settlement negotiations thereafter which ended when the plaintiff rejected the terms of a proposed settlement sometime after July 10, 1969. Settlement negotiations alone, however, do not raise an estoppel, 51 Am.Jur.2d, *Limitations of Actions,* § 444, especially where there is no showing, and there was none here, that the appellee or his counsel held out any inducements not to file suit or indicated that limitations would not be pleaded. *Leonhart v. Atkinson,* 265 Md. 219, 289 A. 2d 1 (1972), *Jordan v. Morgan, Administrator,* 252 Md. 122, 249 A. 2d 124 (1969), *Cornett v. Sandbower, Administrator,* 235 Md. 339, 201 A. 2d 678 (1964). Even after the settlement negotiations were terminated, there was a delay of almost eleven months thereafter before suit was filed. It has been recognized that in order for estoppel to plead the statute of limitations to be effective against a defendant, the plaintiff must have instituted the appropriate legal proceedings reasonably after becoming aware that such proceedings would be required. *See Annot.,* 39 A.L.R.3d 127, 143, § 6, *Duration of Estoppel.*

In *Central Heat, Inc. v. Daily Olympian, Inc.,* 443 P. 2d 544 (Wash., 1968), it was held that when no action was taken until two years and ten months after the grounds for the estoppel ceased to operate, the defendant was not estopped to assert the defense of the three year statute of limitations. In *Regus v. Schartkoff,* 156 Cal. App. 2d 382, 319 P. 2d 721 (1957), it was held that a delay of nearly two years in bringing suit was unreasonable after the circumstances inducing the estoppel were no longer in effect. In *Property 10-F, Inc. v. Pack and*

*Process, Inc.*, 265 A. 2d 290 (D. C., 1970), it was held that the defense of limitations was not barred when there was a delay of over two years in bringing suit after the grounds creating the estoppel had ceased to operate and in *Troutman v. Southern Railway Company*, 296 F. Supp. 963 (N. D. Ga., 1968), it was held the defendant was not estopped to invoke the four year statute of limitations when the plaintiff had more than one year to bring suit prior to the running of the statute after the basis for the estoppel was no longer present.

We think that in this case the plaintiff delayed an un-reasonable length of time in instituting her action, whether the time be measured from the date of the filing of exceptions to the administration account on June 19, 1967, or from the date when present counsel were re-tained on October 26, 1967, or from the date when nego-tiations for settlement broke down after July 10, 1969. In view of this conclusion it will be unnecessary to con-sider the contention of the appellee that the estate should not be bound or prejudiced by the acts of its adminis-trator while acting as attorney for a claimant against it, or the applicability of the special six months' limitation provided by Code, (1964 Repl. Vol.) Article 93, § 112. *See Burket v. Aldridge, Administrator*, 241 Md. 423, 216 A. 2d 910 (1966).

*Judgment affirmed, costs to
be paid by appellant.*