Vesta **STEVENSON**, Appellant
(Plaintiff below),

v.

Prentiss **HALL**, Executor of the Estate of
E. C. Stevenson, deceased, Western Sure-
ty Company, a corporation, Nellie Steven-
son Smith, Hazel Stevenson Hunter, John
V. Stevenson, Sylvia Stevenson Cox, Ruth
Stevenson Sylvester, and Marjorie Steven-
son Koch, Appellees (Defendants below).

No. 3822.

Supreme Court of Wyoming.

Aug. 14, 1970.

Rehearing Denied Sept. 16, 1970.

Henry A. Burgess, of Burgess, Kennedy & Davis, Sheridan, for appellant.

Otis Reynolds and Cecil K. Hughes, Sundance, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Vesta Stevenson, widow of E. C. Stevenson, deceased, seeks in this case to recover from other distributees, legatees, and devisees under the will of E. C. Stevenson, deceased, the sum of $16,388.35 and interest.

The basis of her claim is that this amount was deducted from her share of the estate instead of from the share of the other distributees, for federal estate taxes.

Prentiss Hall, executor of the estate, and Western Surety Company, Hall's bonding company, are named as defendants. As to them, plaintiff has alleged that Hall distributed assets of the estate without requiring a bond or other security from the other distributees, in accordance with § 2–340, W.S.1957, 1969 Cum.Supp.

In an earlier suit the widow sought to vacate the final decree of distribution and to have the federal estate tax apportioned. We held, where time for appeal and for any other challenge of the decree of distribution had passed, the decree became final and res judicata, even though the distribution made was erroneous. In re Stevenson's Estate, Wyo., 445 P.2d 753, 755.

In our decision pertaining to the earlier suit, however, we commented that the widow was not necessarily without remedy, if she can show causes of action accrued to her against some of the distributees when settlement of the federal estate tax was made. The suit now before us seeks to assert such causes of action.

In the district court, defendants moved to dismiss plaintiff's complaint on the ground that the decree of distribution adjudicated all matters involved in the present litigation; and that plaintiff was barred from asserting any claims pertaining to federal estate taxes under the doctrine of *res judicata*. The motion of defendants was granted and all of the plaintiff's causes of action were dismissed. From this final order the widow has appealed.

Having held the decree of distribution in the Stevenson estate final and res judicata as to matters adjudicated therein, we now are called upon to determine what persons and what matters are concluded by the decree.

In general, we consider the decree conclusive as far as claims against the estate or against the executor are concerned, ex-cept for claims based on fraud. We do not consider the decree conclusive as to independent causes of action against persons who were interested in the estate.

### Suit Against Executor

The general rule that decrees of distribution are final adjudications binding upon all persons is subject to the exception that such decrees may be attacked, even in a collateral proceeding, for fraud. Ryan v. Plath, 18 Wash.2d 839, 140 P.2d 968, 977. See also Society of California Pioneers v. McElroy, 63 Cal.App.2d 332, 146 P.2d 962, 966.

In the absence of fraud, however, the decree of distribution becomes final and res judicata when no appeal is taken. Oberlander v. Eddington, Okl., 391 P.2d 889, 893; Cook v. Cook, 17 Cal.2d 639, 111 P.2d 322, 330; Miller v. Walker Bank & Trust Co., 17 Utah 2d 88, 404 P.2d 675, 676. As we pointed out in the previous *Stevenson* case, this is true regardless of errors in the decree.

In the case now before us, Mrs. Stevenson has alleged Schedule M, which was filed in connection with a federal estate tax return, showed the plaintiff received $90,259.95 from the estate of decedent and that none of the federal estate tax or other death taxes were payable from the property received by the widow. It is alleged also that executor Hall agreed with the Internal Revenue Service that none of the federal estate tax would be payable from property received by the widow. Plaintiff then alleges the executor wrongfully deducted the sum of $16,388.35 from plaintiff's distributive share of the Stevenson estate.

The plaintiff has not alleged that the deduction was without her knowledge of the true facts, and she has not characterized any of the acts of the executor as fraudulent. Even though the executor failed to require sufficient bond or security from individual distributees, for their share of federal taxes, that would not pre-

vent the general rule of res judicata from applying.

We therefore hold the dismissal of plaintiff's suit against Hall and Western Surety was proper, and the order of dismissal is affirmed insofar as it relates to Hall and Western Surety.

### Suit Against Distributees

We pointed out in In re Ogburn's Estate, Wyo., 406 P.2d 655, 657, that the public policy of this state, as declared by the legislature, is to apportion federal estate taxes to the persons benefited.[1] However, in Ogburn we had no occasion to give consideration to the requirement that, in making an apportionment, allowances shall be made for any exemptions granted.[2]

Of particular importance to our decision in this case is § 2–341(b) which, in pertinent part, provides:

"Any exemption or deduction allowed by reason of the relationship of any person to the decedent * * * shall inure to the benefit of the person bearing such relationship * * *."

In the Stevenson estate proceedings, the executor made a return for federal estate taxes and paid the amount admitted to be due. The probate court then, without waiting for a determination by federal tax authorities of the amount of taxes due, entered its Decree of Settlement of Accounts and Distribution, which among other things provided:

"It is further Ordered, Adjudged and Decreed that the executor retain in his hands the sum of $10,000.00 out of which he shall pay any additional assessment made by the United States Internal Revenue Service in connection with the estate tax return and to pay the tax, if any, upon the fiduciary return to be filed or any other taxes that may be properly levied and assessed against said estate * * *."

The widow's share of the estate was one-fourth. Because of this, the executor deducted from her distributive share one-fourth of the tax originally paid and one-fourth of the $10,000 retained by the executor for any additional assessment. According to allegations in the present suit, the federal tax examiner made a deficiency assessment of $19,659.94. The deficiency figure, however, was eventually settled and compromised for $12,862.58 plus interest of $2,344.85. The $10,000 retained by the executor was used in paying the additional tax.

The theory of plaintiff's suit in this case is that, if she had been given the benefit of the widow's exemption (as provided for in § 2–341(a) and (b)), none of the federal estate taxes would have been deducted from her distributive share. She alleges, however, that $16,388.35 was in fact deducted from her share.

■ We have already held in In re Stevenson's Estate, Wyo., 445 P.2d 753, 755, that the decree of distribution was final and res judicata regardless of an erroneous distribution. The effect of the decree being res judicata means the probate proceedings are ended; that property of the estate remains distributed as it has been distributed; and that the discharge of the executor and his bonding company is final, unless a case of fraud is asserted and proved.

■ The conclusiveness of the probate settlement, however, does not mean plaintiff cannot assert an independent cause of action against persons who were interested in the estate. For example, plaintiff could sue on a note or debt owing to her from one of the other distributees.

We understand plaintiff to be alleging in the instant suit that other distributees became indebted to her when the executor caused her to pay taxes for distributees who were responsible for such taxes. Irrespective of equity principles which might

---

1. Section 2–338, W.S.1957, 1969 Cum.Supp.

2. Section 2–341(a), W.S.1957, 1969 Cum. Supp.

apply, there is statutory authority in the Uniform Estate Tax Apportionment Act [§§ 2–336 to 2–346] for such a suit as plaintiff has brought.

### Statutory Provisions

In § 2–339(d), W.S.1957, 1969 Cum. Supp., the legislature has said, in any suit or judicial proceeding to recover from any person interested in the estate the amount of tax apportioned to such person in accordance with the apportionment act, the determination of the probate court in respect thereto shall be prima facie correct.

Two things must be recognized from this provision: (1) It is clear the legislature contemplated such a suit as plaintiff has now brought; and (2) the determination of the probate court with respect to apportionment is only *prima facie* correct and not necessarily conclusive.

■ Moreover, § 2–339(d) speaks of a tax apportionment "in accordance with this act [§§ 2–336 to 2–346]." We must therefore consider that the provision applies to any suit to recover from another distributee the amount of tax which is apportioned to the person sued, "in accordance with this act."

If there be any doubt about plaintiff's suit against other distributees being authorized under § 2–339(d), the intent of the legislature becomes even more clear when this provision is read and construed together with § 2–340. Subdivision (b) of § 2–340 contemplates that there may be a distribution prior to final apportionment of the tax and specifies that in such case the distributee shall provide a bond or other security for his apportionment liability.

Section 2–340(a) provides, when the property held is insufficient to satisfy the proportionate amount determined to be due from a distributee, the person required to pay the tax may "recover" the deficiency from the person chargeable. Also, if property has not been held, the person required to pay may recover from the person chargeable the amount of tax apportioned

to the person "in accordance with this act [§§ 2–336 to 2–346]."

■ Thus, the Uniform Estate Tax Apportionment Act contemplates and expressly authorizes such a suit as plaintiff has brought against persons who shared in the distribution of the Stevenson estate. The act itself specifies how estate taxes shall be apportioned between persons interested in the estate. Plaintiff therefore has a right to recover from any distributee the amount of taxes paid by her which are properly apportioned to such distributee "in accordance with this act [§§ 2–336 to 2–346]."

■ Our apportionment act is the Uniform Estate Tax Apportionment Act. It is designed to clarify who is liable for payment of the estate tax when there is no provision in the decedent's will specifying how such tax shall be borne. The act was drafted by the Commissioners on Uniform State Laws. Their notes indicate it was their intention that a suit would lie to recover taxes paid by one beneficiary of an estate, which should have been paid by another beneficiary.

At 9A Uniform Laws Annotated, p. 497, a Commissioners' Note indicates consideration was given to eliminating the section which is § 2–339 in our 1969 Cum.Supp., because of constitutional considerations. The note then states:

"In order to meet the constitutional objection as above stated, the section provides that the determination of the Probate Court shall be prima facie only in any suit to recover the apportioned tax."

Inasmuch as our apportionment act (§ 2–339(d)) makes reference to any suit or judicial proceeding to recover the amount of tax apportioned to a defendant "in accordance with this act"; inasmuch as the same section makes a determination of the probate court prima facie correct only and not necessarily conclusive; and inasmuch as § 2–340(a) expressly states that a person who has been required to pay may re-

cover from any person who should have paid the amount of the tax apportioned to defendant "in accordance with this act," plaintiff's suit against other beneficiaries and distributees of the Stevenson estate should not have been dismissed.

The district court's order of dismissal is affirmed insofar as it relates to defendants Hall and Western Surety. It is reversed insofar as it relates to other defendants. The case is remanded for further proceedings in connection with such other defendants.

PARKER, Justice (dissenting).

Although in the original case I was unconvinced of the propriety of this court's holding that the August 10, 1964, decree was final and res judicata, the court then so determined. In re Estate of Stevenson, Wyo., 445 P.2d 753, 757. In the light of that decision, which is the law of the case, I would affirm the trial court in the present appeal.

As is noted by Mr. Justice McIntyre in the prevailing opinion, there has been no allegation of fraud; hence no ground for suit against the executor appears. It is true that § 2–339(d), W.S.1957 (1969 Cum.Supp.), provides:

"In any suit or judicial proceeding to recover from any person interested in the estate the amount of the tax apportioned to the person in accordance with this act [§§ 2–336 to 2–346], the determination of the probate court in respect thereto shall be prima facie correct."

Further, under this and other provisions of the Act, one who physically turns over the tax to the Federal Government has legal recourse for the collection from any person interested in the estate of the amount of tax apportioned to that person by the probate court (under authority of § 2–339). Nevertheless, I see no validity in the prevailing opinion's construction of the Act to give a person interested in an estate to whom a sum was apportioned by the probate court (whether such sum was in fact mathematically a correct or incorrect apportionment) the same legal recourse. There is no indication that the legislature

intended that the Act be given such an interpretation.

Unfortunately, the uniform law commissioners have not directly expressed themselves on a matter such as here before us. However, it is of interest to note the suggestion of American Bar Association members that when a beneficiary is required to pay more than his share because of default of another beneficiary he should have a cause of action over against the defaulter and the committee's responding opinion that to do so is impractical. 9A U.L.A. 500.

The present disposition is without foundation.

### ORDER ON REHEARING

This cause having been taken under advisement on the petition of appellees for a rehearing; the matter having been fully considered by the court; Chief Justice GRAY and Justices McINTYRE and McEWAN having voted to deny such rehearing; and Justice PARKER having voted to grant such rehearing:

It is ordered that said petition for rehearing be, and the same is hereby denied.