**Roberta J. PIKE, on her behalf and on behalf of the heirs, legatees and devisees of Herbert S. Flatt, deceased, Appellant (Plaintiff),**

v.

**Norman L. MARKMAN and the Denver Colorado National Bank of Denver, Colorado, individually and as Executors and Trustees of the Estate of Herbert S. Flatt, deceased, Appellees (Defendants).**

No. 5478.

Supreme Court of Wyoming.

Sept. 25, 1981.

Joseph E. Darrah, Darrah & Anderson, Powell, for appellant.

Ernest J. Goppert, Jr. (argued), and James M. Guill, Goppert, Day & Olson, Cody, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This case was commenced by a legatee (appellant) of Herbert S. Flatt against the executors (appellees) of his estate almost three full years following the final settlement of the estate. Appellant summarizes the suit as an action

"to recover damages based primarily upon a breach of fiduciary duty, negligence, malfeasance and misfeasance in the office of the executor with regard to the assets of the estate, and for an accounting towards the view of determining all of the damages suffered by appellant."

She challenges the district court's judgment on appeal as follows:

"A. The District Court erred in finding that there was no negligence and breach of fiduciary duty by the Appellee (executor) by virtue of the fact that broad powers were confirred [sic] under the provisions of the Last Will and Testament.
"B. The Court erred in concluding that Appellant had not proven her damages when the suit was directed towards obtaining an accounting and the Court should have ordered an accounting under the circumstances presented."

The appellees raise an additional issue. They argue that a decree of final settlement constituted a final judgment releasing the executors from liability for any actions taken during the administration of an estate. Accordingly, they argue that though the district court rejected this argument, the court's judgment in favor of appellees may be affirmed on that basis.

We will affirm.

Herbert S. Flatt died on April 12, 1967. On June 27, 1967, Norman L. Markman—appellee—on behalf of and as agent of the Colorado National Bank of Denver—appellee—filed a petition seeking probate of Mr. Flatt's will and issuance of letters testamentary. On July 31, 1967, the Colorado National Bank of Denver was appointed executor of the estate. As set forth in the will, no bond was required.

Under the terms of the will Mr. Flatt left to his wife, Mabel A. Flatt, his personal effects. The remainder of his estate was devised to the Colorado National Bank of Denver in two separate trusts, one for the use and benefit of his wife, the other for the use and benefit of his daughters, Ruth E. Hankins and Roberta J. Pike. It was further provided that upon the wife's death the property in the first trust was to be conveyed to such persons as his wife might appoint in her will. If such power was not exercised, then the property was to be divided equally between Mr. Flatt's daughters. Under the terms of the will the executor and the trustee were given "without order of any Court, full and unrestricted discretionary power and authority * * *."

The administration of the estate spanned eight years. The estate itself consisted of many and diverse properties. Those involved in this case included:

1) 32,420 shares of common stock in Yellowstone Sulphur Company (99,186 shares were outstanding);

2) City of Lemoore, California, 6% Street Improvement Bonds Series 1962–1; and

3) Various "blue chip" stocks.

On June 10, 1975 a decree of final settlement was entered transferring the estate's assets to Colorado National Bank of Denver as trustee for the two trusts.

On May 25, 1978, appellant filed a civil action against appellees claiming that they had breached their fiduciary duties in their handling of the estate. This was the first objection of record and it occurred nearly three years after final settlement. The complaint was dismissed on August 29, 1978, for insufficient service of process. An amended complaint was filed September 28, 1978.

On November 3, 1978, appellees moved to dismiss for, among other reasons, the district court's lack of jurisdiction over probate matters following entry of a final settlement. As the appellees stated in their motion:

" * * * this Court does not have jurisdiction over the subject matter of this Complaint and * * * all claims therein should properly have been brought in the probate proceeding being Probate No. 3294 in the District Court of Park County, Wyoming, Fifth Judicial District."

The district court denied this motion on May 10, 1979. In its opinion letter the court addressed the issue in question here as follows:

" * * * Wyoming's statutes concerning what is included within probate jurisdiction are very general and provide no fixed guideline for determining what is probate of civil jurisdiction. This has resulted in conflicts which are generally left up to the judge to decide. From the case law existing, a very general rule has been developed to include within the probate jurisdiction all that is necessary to prove the testamentary instrument, collect the assets of the estate, pay the debts and distribute the remainder. When the decree of distribution has been rendered, the jurisdiction of the probate court over the property administered and distributed terminates. *Estate of Stevenson vs. Hall,* Wyo.Supr.Ct., 445 P.2d 753 (1968).

"Applying this case law to the present case, it's clear that this action is proper as a civil action rather than a probate action. While the probate court does have jurisdiction up to the time of distribution, this jurisdiction can't extend to include administration of a testamentary trust without some statutory authority. Lacking this statutory authority, this case is properly filed as a civil matter."

The case proceeded to trial before the district court judge. On January 19, 1981, he issued his judgment finding generally in favor of the defendants and against the plaintiff.

In response to the issues raised on appeal by appellant, appellees have argued that the district court lacked authority to hear the plaintiff's complaint concerning actions taken by them as executors during probate proceedings. Appellees insist that the time and place for appellant to have voiced her objections was in the probate court before the entry of the final settlement.

■ An appellee who has not cross-appealed may present an argument which supports the trial court's judgment even if that argument was rejected by that court. *Dechert v. Christopulos,* Wyo., 604 P.2d 1039, 1046 (1980). Furthermore, we may affirm the district court on any legal ground appearing in the record. *Wightman v. American National Bank of Riverton,* Wyo., 610 P.2d 1001, 1003 (1980) and cases there cited. Accordingly, we may properly consider appellees' argument here.

■ The statutes governing the administration of an estate are those in effect at the time of the testator's death. *Seeley v. Estate of Seeley,* Wyo., 627 P.2d 1357 (1981). In this case, we must consider §§ 2–192 and 2–194, W.S. 1957. Section 2–192 provided:

"On the day appointed, or any subsequent day to which the hearing may be postponed by the court or judge, any person interested in the estate may appear and file his exceptions in writing to the account and contest the same; provided, that *in the case of final account all objections or exceptions must be filed within the time given therefor* in the notice of final settlement, unless for good cause shown the court or judge shall extend the time." (Emphasis added.)

Section 2–194 provided:

"*The settlement of the account and the allowance thereof by the court or judge, or upon appeal, is conclusive against all persons in any way interested in the estate,* saving, however, to all persons laboring under any legal disability their right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution; and in any action brought by any such person, the allowance and settlement of the account is prima facie evidence of its correctness." (Emphasis added.)

In *Estate of Stevenson*, Wyo., 445 P.2d 753 (1968) this court was called upon to consider the finality of a final settlement in light of these statutes. In that case a widow sought to have a decree of distribution vacated. There, this court said:

"The fundamental aim of probate procedure is that there should be a speedy settlement and adjudication of rights in the property of a decedent, to the end that those entitled to share therein may have the full benefit of the rights which the law gives them at the earliest moment consonant with due process and orderly procedure. *In re Mayne's Estate*, Wyo., 345 P.2d 790, 795.

\* \* \* \* \* \*

"Also, in the probate matter of *In re Kokesh's Estate*, Wyo., 360 P.2d 368, 371, we had occasion to say all heirs who did not appeal had acquiesced in the decree of the district court; and as to them the decree of the court was res judicata. This court, we said, had no authority to disturb or interfere with a matter which has become res judicata.

"Appellant has shown us no statute or rule, which she claims to be applicable to the circumstances of this case, which would authorize the distribution in probate to be vacated after two years and eight months from entry of the decree. On the other hand, there is every reason to hold the decree is res judicata, and the order denying appellant's motion to vacate the decree of distribution was proper.

"Section 2–194, W.S.1957, provides the settlement of the account and allowance thereof by the court or judge, or upon appeal, is conclusive against all persons not under legal disability in any way interested in the estate. Thus, the rendition of a final account by the executor and allowance thereof by the court were by statutory declaration conclusive against appellant." 445 P.2d at 756.

The widow, unsatisfied following that decision, then proceeded against the executor, as well as against her fellow distributees, legatees, and devisees in an attempt to recover funds she claimed were wrongly deducted from her share of the estate. The case once again came before this court where it was said:

"Having held the decree of distribution in the Stevenson estate final and res judicata as to matters adjudicated therein, we now are called upon to determine what persons and what matters are concluded by the decree.

"In general, *we consider the decree conclusive as far as claims against the estate or against the executor are concerned, except for claims based on fraud.* We do not consider the decree conclusive as to independent causes of action against persons who were interested in the estate.

\* \* \* \* \* \*

"The general rule that decrees of distribution are final adjudications binding upon all persons is subject to the exception that such decrees may be attacked, even in a collateral proceeding, for fraud. [Citations.]

"In the absence of fraud, however, the decree of distribution becomes final and res judicata when no appeal is taken. [Citations.] As we pointed out in the previous *Stevenson* case, this is true regardless of errors in the decree." (Emphasis added.) *Stevenson v. Hall*, Wyo., 473 P.2d 581 (1970).

We are bound by *Stevenson*, supra. The claims in this case were made against the executors. They arise from the handling of the estate. The time for objections or exceptions was before the decree of final settlement. With the entry of that order, the executor is released from liability except for fraud.[1] There has been no claim nor showing of fraud in this case. Accordingly we agree with the district court's de-

1. The word "fraud" as used in *Stevenson v. Hall*, supra, 473 P.2d at 581, was discussed in detail in a case relied upon by Stevenson—*Ryan v. Plath*, 18 Wash.2d 839, 140 P.2d 968 (1943). The court in *Ryan* said:

"To this general rule there is an exception, upon which appellant relies, to the effect that such decrees may be attacked, even in a collateral proceeding, for fraud. [Citations.] However, in such situations the fraud relied

termination that the appellant was not entitled to recover on her complaint. We need not consider appellant's contentions because, regardless of their merits, she was not entitled to recover in that she has been foreclosed by the final closing of the estate and passage of time.

Affirmed.

upon must be extrinsic or collateral to the issues tried in the original proceeding, that is to say, the fraud on the part of the prevailing party must have been such as deprived the unsuccessful party of a fair hearing upon the original controversy. As stated in the *Farley* [v. Davis] case [10 Wash.2d 62, 116 P.2d 268]:

" 'Moreover, when fraud is alleged as the basis for collateral attack upon a judgment or decree, the fraud alleged and sought to be established must be extrinsic or collateral to the issues tried in the proceedings which are attacked, or, as sometimes stated, there must have been fraud in procuring the original judgment or degree. [Citing cases.]

" ' "Extrinsic or collateral fraud," justifying equitable relief against a judgment or decree, means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy. [Citing cases.]'

"The alleged extrinsic fraud which the appellant now relies upon is that the respondent Plath, by letters and by allegations in his petition for abandonment of the property, concealed the true state of affairs respecting the financial possibilities of the estate and the pending negotiations with the Guaranty Trust Company, and thereby lead the heirs to believe that it was futile for them to pay any further attention to the administration of the estate.

\*   \*   \*   \*   \*   \*

"If there were any fraud in the administrator's management of the estate property, such fraud would be intrinsic in, not extrinsic to, the order discharging the administrator and closing the estate. However, as has already been stated, there is no evidence in this case of any mismanagement by the administrator during the course of his operation of the estate property down to the time that the property was sold to the Washington Fruit & Produce Company. Moreover, the heirs had due notice of the hearing upon the final account and petition for discharge, and it was incumbent upon them to appear at the hearing and raise any objections which they might have had to the account or the doings of the administrator as such. They were in no way prevented from attending that hearing or presenting their objections, and hence the final decree is res judicata of the matters involved therein. The trial court did not err in refusing to permit appellant to inquire into the acts and doings of the administrator while acting in that capacity as the operator of the property of the estate." (Bracketed material in original.)

Though the word "fraud" may be used by some to denote a breach of a fiduciary duty, that is not the type of fraud meant by Stevenson. In order to subject a decree of final distribution or settlement to collateral attack the fraud alleged must be of a type which prevented the dissatisfied party from having had his or her day in court.

In this case appellant does not contend that she was prevented by acts of the appellees from raising her objections before the decree of final settlement was entered. Even under the facts alleged in her complaint, it appears that had she been vigilant, she could have had a day in court in which to air her grievances. No fraud has been alleged which justifies setting aside the decree of final settlement.